UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTRN DIVISION

| | |
|---|---|
| GREGORY THOMPSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:15CV1012 HEA |
| | ) |
| TOM VILLMER, et al., | ) |
| | ) |
| Defendants. | ) |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motion for Summary Judgment [Doc. No. 77] and Plaintiff's Motion for Summary Judgment, [Doc. No. 80]. The parties respectively oppose the others' motion. For the reasons set forth below, the Court denies Plaintiffs Motion and denies Defendants' Motion only as to Defendant James Ford. Defendants' Motion for Summary Judgment is granted as to Defendant Wendy Dashner.

**Facts and Background**

Plaintiff, an inmate in the Missouri Correctional System, brought this Section 1983 action against Defendants claiming that his constitutional rights were violated when he was subjected to an unnecessary and wanton use of force. The following facts are taken from exhibits in the record and the parties' respective statements of uncontroverted facts.

Plaintiff was an inmate incarcerated at Farmington Correctional Center ("FCC") in the State of Missouri. Defendant James Ford ("Ford") was a Correctional Officer II ("CO") at FCC. Defendant Wendy Dashner ("Dashner") was a Functional Unit Manager ("FUM") at MCC, and was CO Ford's supervisor. It is undisputed that Plaintiff had no significant interaction with Ford or Dashner before July 9, 2014.

On July 9, 2014, Ford was conducting a security check of Housing Unit 6 when he encountered Plaintiff playing cards in a cell with four other inmates. When Ford passed the cell, a verbal exchange took place. Parts of Plaintiff's and Ford's respective accounts of the subsequent events are in dispute:

<u>Plaintiff's sworn testimony, in summary:</u> While walking near the cell where Plaintiff was playing cards, Ford smelled bleach and asked the inmates playing cards where the bleach came from. When no one responded, Ford said "Where did you n\*\*\*\*rs get this bleach from?"[1] Plaintiff said "Whoa," and told Ford "You want us to respect you; you should respect us the same way." Plaintiff testified that this statement "blew a ticking time bomb" in Ford, who said "No, you come with me." Plaintiff followed Ford to the sally port, where Plaintiff saw FUM Dashner. In the sally port, Ford took out a can of mace and began shaking it.

---

[1] Plaintiff testified that initially, he did not remember Ford's use of a slur due to his concussion, but that he was reminded of it by fellow inmates. Plaintiff testified that he does, in fact, remember Ford using the slur now; the memory is based on more than the mere suggestions.

Plaintiff asked Ford what he was going to do with the mace, to which Ford replied "I'm going to spray you if you don't turn around and cuff up." Plaintiff asked, "You're going to lock me up because I said respect us like you want us to respect you?" Ford told Plaintiff to not ask questions. Plaintiff turned to Dashner and said "Hey, could you come out and talk?" and Dashner shook her head no. Plaintiff then told Ford that he did not want Ford to cuff him, and requested that another guard cuff him. Ford called another guard, who cuffed Plaintiff. Ford then used his right hand to grab Plaintiff's left arm and started walking out to the yard. Plaintiff saw Dashner in the sally port as he and Ford exited. After Ford and Plaintiff had walked about 10 feet, Plaintiff said "Man this some bull****. You're going to lock me up." Plaintiff turned toward Ford, looking at him, and said "You're going to lock me up on that bullcrap, man? Man." At this point, Ford yanked Plaintiff back and jumped on Plaintiff's back. Ford asked Plaintiff if he was resisting and Plaintiff said "I ain't did nothing. Get off my back, man." Ford then wrapped his legs around Plaintiff's waist and put his arm around Plaintiff in a chokehold. Ford did something that caused the pair to fall forward, and Plaintiff's face struck the concrete ground. On the ground, Ford continued to choke Plaintiff with his left arm while hitting Plaintiff in the head with his right hand. Ford also tried to mace Plaintiff, but Plaintiff moved his head to avoid the direct spray. Soon, other guards came to intervene, at which point Ford got up. Plaintiff looked up and saw

3

Dashner through a window of the housing unit. The other guards picked Plaintiff up off the ground, shackled his legs and took him to administrative segregation in Housing Unit 5. Plaintiff told those guards that his chest hurt and that he needed medical attention. Plaintiff was put into administrative segregation and was sent to hospital due to cardiac arrest 10 days later. Plaintiff claims he had a concussion, and currently has a defibrillator and takes heart pills as a result of the use of force.

<u>Defendant Ford's sworn testimony, in summary</u>: Ford walked past the cell in which Plaintiff and three other inmates were "just hanging out." Once he had passed the call, someone said "What the f*** are you sniffing at?" This prompted Ford to go back to the cell and say "Excuse me?" In response, Plaintiff repeated "What the f*** are you sniffing at?" Ford asked Plaintiff to come out of the cell, and Plaintiff complied. Ford asked Plaintiff to go into the sally port, and Plaintiff complied. In the sally port, Ford asked Plaintiff to turn around and submit to wrist restraints.[2] Plaintiff told Ford to "f*** off" and that he would not submit to wrist restraints for Ford. Ford then pulled out his pepper spray and told Plaintiff he had one more chance to submit to wrist restraints. This time, Plaintiff complied, and Ford cuffed him. Ford exited the sally port, escorting Plaintiff with a soft empty hand escort – that is, with Plaintiff to the left and slightly in front him, with

---

[2] When asked in his deposition why Plaintiff needed to be restrained, Ford said Plaintiff "had already been threatening me once." When asked if cursing at someone is threatening, Plaintiff replied, "Absolutely. When you are in a cell with three other offenders and you act that way, that's definitely aggressive."

4

Ford's left hand just above Plaintiff's elbow, and his right hand free.  When the door opened, Plaintiff began talking and cursing, though Ford cannot recall exactly what Plaintiff was saying.  Plaintiff walked cooperatively for about 10 feet.  Plaintiff, still talking, then pivoted to his right, turning his body to face Ford while also pulling away from Ford's soft empty handed escort.  At this point, Ford believed Plaintiff had the ability and means to hurt him, though he did not know Plaintiff's intent.  Because Plaintiff had been verbally aggressive earlier, Ford was afraid he would be aggressive again.  Ford's reaction was to prevent Plaintiff from hurting him.  To do so, he believed it was "necessary to take [Plaintiff] off his feet to the ground and get him away from where he could head butt me, kick me, knee me; anything he could use as a weapon, take it away."  Ford, who still held Plaintiff's left elbow in his left hand, reached up with his right hand and grabbed Plaintiff's right shoulder.  He then pulled Plaintiff towards him, causing them both to become unbalanced.  Ford fell straight onto his back and neck onto some dirt.  Plaintiff landed "straight on top of" Ford, who then rolled Plaintiff off of him, and immediately radioed an emergency call.  While Ford and Plaintiff were still on the ground, additional guards arrived and took Plaintiff away.  Soon after, Ford prepared a report of the incident, which was typed up by another officer and signed by Ford.  The report states that Ford placed Plaintiff face down on the ground.  When confronted with this inconsistency, Ford insisted that he had never placed

Plaintiff face down on the ground and chalked the mistake up to "laziness" on his part. Ford sustained several injuries in the incident.

Plaintiff filed an Informal Resolution Request on October 28, 2014. Ford was the subject of Plaintiff's IRR, and Dashner was mentioned as a witness. Representatives of the Missouri Department of Corrections received and processed Plaintiff's IRR, grievance, and grievance appeal and issued rulings on the merits.

## Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden is on the moving party. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op. Inc.,* 838 F.2d 268, 273 (8th Cir. 1988). After the moving party discharges this burden, the nonmoving party must do more than show that there is some doubt as to the facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, the nonmoving party bears the burden of setting forth affirmative evidence and specific facts by affidavit and other evidence showing that there is a genuine dispute of a material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex,*

477 U.S. at 324, 106 S.Ct. 2548. "A dispute about a material fact is 'genuine' only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Herring v. Canada Life Assur. Co.,* 207 F.3d 1026, 1030 (8th Cir. 2000) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505). A party resisting summary judgment has the burden to designate the specific facts that create a triable controversy. *See Crossley v. Georgia–Pacific Corp.,* 355 F.3d 1112, 1114 (8th Cir. 2004). Self-serving, conclusory statements without support are not sufficient to defeat summary judgment. *Armour and Co., Inc. v. Inver Grove Heights,* 2 F.3d 276, 279 (8th Cir. 1993).

In ruling on a motion for summary judgment, the court must review the facts in a light most favorable to the party opposing the motion and give that party the benefit of any inferences that logically can be drawn from those facts. *Matsushita,* 475 U.S. at 587; *Woods v. DaimlerChrysler Corp.,* 409 F.3d 984, 990 (8th Cir. 2005). The Court may not "weigh the evidence in the summary judgment record, decide credibility questions, or determine the truth of any factual issue." *Kampouris v. St. Louis Symphony Soc.,* 210 F.3d 845, 847 (8th Cir. 2000). However, the court is required to resolve all conflicts of evidence in favor of the nonmoving party. *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207, 210 (8th Cir. 1976).

**Defendant Dashner**

Plaintiff claims that Dashner is liable for the violation of his Eighth Amendment rights in that she failed to properly supervise Ford and did nothing to stop Ford from "severely beating" Plaintiff. Plaintiff claims that there is a genuine fact dispute as to whether Dashner observed Plaintiff being taken down by Ford.

Plaintiff testified at his deposition that "Dashner [was] sitting right there looking through the window the whole time" that the incident was occurring. Plaintiff also testified that when he asked Dashner to be his witness, she told him "That's between you and Mr. Ford" and said to not put her in that; that she has nothing to do with it. However, Plaintiff neither testified nor presented evidence that Dashner was looking out the window at the time the alleged constitutional violation was taking place. Plaintiff testified that when he turned toward Ford, he saw Dashner in the window. Although Plaintiff admitted that his back was to the window once Ford jumped on his back, he adamantly asserted at his deposition that Dashner must have seen the incident, because he also saw her at the window when the guards picked him up off the ground.

Dashner testified that she remembered observing Ford and Plaintiff standing together, apparently having a heated discussion. Dashner was either in the sergeant's office or sally port, though she testified that she could not remember which one. Dashner testified that she did not intervene then because nothing inappropriate was happening between Ford and Plainitff. Dashner testified that at

8

some point she turned away and went into the control room. At this point, Ford and Plaintiff were no longer within her view. Dashner testified that she never saw Ford and Plaintiff outside in the yard, nor did she see Ford engage in a use of force against Plaintiff.

Plaintiff claims that summary judgment should not be entered in favor of Dashner because there is a fact dispute as to whether Dashner had notice of Ford performing a "spontaneous use of force." This argument is not well taken. Plaintiff's record testimony and statement of uncontested facts only address where Plaintiff allegedly saw Dashner before and after the incident. They do not address when or whether Dashner was actually looking at or in the direction of Plaintiff and Ford. Plaintiff fails to allege specific facts showing that Dashner actually observed the use of force. Rather the facts show only that Plaintiff could see Dashner at certain times before and after the use of force. No factual dispute exists as to the threshold issue of Dashner's contemporaneous awareness of the incident. Defendant Dashner is entitled to judgment as a matter of law.

**Defendant Ford**

Plaintiff claims that the take-down performed on him by Ford was a violation of his Eighth Amendment right to be free from cruel and unusual punishment. "The Eighth Amendment bars correctional officers from imposing unnecessary and wanton pain on inmates, regardless of whether there is evidence

9

of any significant injury." *Johnson v. Blaukat,* 453 F.3d 1108, 1112 (8th Cir.2006) (citing *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). "The unnecessary and wanton standard does not have a fixed meaning, however, and the state of mind necessary to establish cruel and unusual punishment depends on the nature of the claimed constitutional violation. Thus, when correctional officers are accused of using excessive physical force, they act with a wanton state of mind when the force is applied maliciously and sadistically to cause harm." *Parkus v. Delo*, 135 F.3d 1232, 1234 (8th Cir. 1998) (*citing Hudson*, 503 U.S. at 6–7, 112 S.Ct. at 998–99; *Whitley v. Albers*, 475 U.S. 312, 320–21, 106 S.Ct. 1078, 1084–85, 89 L.Ed.2d 251 (1986)) (internal citations omitted).

Ford's state of mind in using force on Plaintiff is thusly a material fact, and one that is in dispute. Plaintiff claims that Ford used racial slurs against him immediately prior to the use of force. The trier of fact could reasonably find that the use of derogatory, inflammatory language suggests a wanton state of mind and that the use of force was malicious or sadistic. However, Ford categorically denies using a racial slur. Because the record evidence shows that this material fact is controverted, summary judgment as to Plaintiff's claim against Ford is not warranted.

Similarly, Defendant Ford is not entitled to summary judgment based on qualified immunity, due to the outstanding question of fact as to wantonness or maliciousness. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546, 132 S.Ct. 1235, 1244, 182 L.Ed.2d 47 (2012) (*quoting Ashcroft v. al-Kidd*, 563 U.S. 731, 743, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011)) (internal quotations omitted). If Ford's use of force was wanton and malicious, then it would be a clear violation of the Eighth Amendment, and Ford would not be entitled to summary judgment. *See Hope v. Pelzer*, 536 U.S. 730, 741, 122 S.Ct. 2508, 2516, 153 L. Ed.2d 666 (2002). A disputed material fact bars summary judgment in favor of Ford based on qualified immunity.

## Conclusion

Defendant Dashner is entitled to judgment as a matter of law. Judgment in favor of Defendant Dashner will be entered upon resolution of the remaining issues herein. On the other hand, there remains a material fact in dispute as to the claim against Defendant Ford, precluding summary judgment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment [Doc. No. 77] is GRANTED as to Defendant Wendy Dashner and **DENIED** as to Defendant James Ford.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment [Doc. No. 80] is **DENIED.**

Dated this 25th day of October, 2018.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE